**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

JAMES RAY HARRISON,

    Petitioner,

v.                                                     Case No: 5:12-cv-488-Oc-36PRL

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

    Respondents.
_____/

## ORDER

This cause comes before the Court upon Petitioner James Ray Harrison's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Having reviewed the petition, Respondents' response (Doc. 9), and Harrison's reply (Doc. 11), the Court determines that the petition should be denied.

## BACKGROUND

On September 14, 2006, Harrison was charged in a two-count information with sexual battery on a person 12 years or older but less than 18 years of age by a person in a position of familial or custodial authority, in violation of § 794.011(8)(b), (1)(h), Fla. Stat. (Count 1); and lewd and lascivious molestation by a person 18 years or older, of a victim 12 years or older but less than 16 years of age, in violation of § 800.04(5)(a), (c)(2), Fla. Stat. (Count 2). On October 9, 2007, following a jury trial, Harrison was convicted as charged. The trial court found Harrison to be a sexual predator, habitual felony offender,

and a prison releasee reoffender, and he was sentenced to life imprisonment on Count 1 and thirty years' imprisonment on Count 2. Harrison filed a direct appeal of his sentence on November 7, 2007, and the Florida Fifth District Court of Appeal per curiam affirmed Harrison's conviction and sentence without a written opinion on September 29, 2008.

On July 23, 2009, Harrison filed a Florida Rule of Criminal Procedure 3.800(a) motion to correct illegal sentence contending that his concurrent sentences as a prison releasee reoffender and habitual felony offender violated Florida law. The trial court summarily denied Harrison's motion, and Harrison filed an appeal, which the Florida Fifth District Court of Appeal per curiam affirmed without a written opinion on February 23, 2010.

Harrison then filed a Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief, which was later supplemented with an additional claim. The motion and supplement raised a total of thirteen grounds for relief. On February 4, 2011, an evidentiary hearing was held before the post-conviction court, and the post-conviction court denied relief on the merits. Harrison appealed, and the Fifth District Court of Appeal per curiam affirmed the post-conviction court's order on May 1, 2012.

On September 4, 2012, Harrison timely filed his § 2254 petition, raising four grounds for relief. Namely, Harrison alleges that his constitutional right to effective assistance of counsel was violated because his trial counsel (1) revealed during opening statement that Harrison had been previously incarcerated and promised that Harrison would testify in his own defense; (2) failed to investigate avenues beneficial to the defense, specifically, counsel failed to procure expert testimony to rebut the testimony of the State's

expert witness, nurse practitioner Karen Walker; (3) failed to move for mistrial or request a curative instruction following an inappropriate racial remark by the State's key witness; and (4) failed to object to testimony provided by Nurse Walker that was beyond the scope of her knowledge and expertise.

## STANDARD OF REVIEW

**1. Section 2254 Cases**

Under § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective as of April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Section 2254(a).  "Federal habeas proceedings 'are not forums in which to relitigate state trials.'"  *Jamerson v. Sec'y Dep't of Corr.*, 410 F.3d 682, 687 (11th Cir. 2005) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983)).

Where a state court initially considers the issues raised in the petition and enters a decision on the merits, § 2254(d) governs the review of those claims.  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  A federal court may grant a § 2254 petition only if the state decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Section 2254(d); *see also Price v. Vincent*, 538 U.S. 634, 638 (2003); *Maharaj v. Sec'y for the Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

3

The Supreme Court discussed the meaning of the "contrary to" and "unreasonable application" clauses in *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Section 2254 establishes a highly deferential standard for reviewing state court judgments. *Parker v. Sec'y for the Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003). If a federal court concludes that a state court applied federal law incorrectly, it may grant habeas relief only if that application was "objectively unreasonable." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 4 (2003). Moreover, under § 2254(e)(1), a state court's factual findings shall be presumed correct, and the petitioner can rebut the presumption of correctness only by clear and convincing evidence. *See also Parker*, 331 F.3d at 768.

**2. Ineffective Assistance of Counsel**

Harrison alleges ineffective assistance of counsel in all four grounds for relief. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. *Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). In determining whether counsel performed deficiently, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

Next, Harrison must also demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To meet this burden, Harrison must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

## DISCUSSION

**1. Ground 1**

First, Harrison argues that his counsel was ineffective by revealing during opening statement that Harrison had a prior felony record and that he would testify in his own

defense at trial.[1] (Doc. 1 at 12-13, 15-18). Harrison maintains that such tactic was ineffective assistance of counsel because Harrison's prior record was so extensive, including several convictions for crimes of dishonesty, that no reasonable counsel could have believed revealing such information during opening statement constituted a viable strategy. (Doc. 11 at 11-13). Harrison also alleges that such tactic was deficient because counsel later urged Harrison not to testify. (Doc. 1 at 13).

In denying this claim, the post-conviction court found:

The persuasive evidence at the 3.850 hearing was that [Harrison] and his counsel discussed, on numerous occasions, the pros and cons of [Harrison] testifying at trial. [Harrison] advised his counsel that he wanted to testify. The Court finds that the choice had been made by [Harrison] at the time the opening statement was given, that he would be testifying. As the State correctly points out in response, it can be considered a strategic decision by the defense counsel to "soften the blow" by acknowledging, in opening statement, that the jury may hear some negative things about a defendant when he testifies. Strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct. *Occhicone v. State*, 768 So. 2d 1037 (Fla. 2000). In this case, the victim was [Harrison's] natural daughter. He had not been a part of her life for a number of years due to his prior incarceration. Defense counsel was attempting to suggest to the jury that [Harrison] was now taking active involvement in his daughter's life and, inferentially, had not done so earlier in her life due to his prior record.

The Court also rejects, as not credible, [Harrison's] testimony at the 3.850 hearing that his counsel urged him or convinced him not to testify. The Court

---

[1] Specifically, during opening statement, counsel stated:

From the moment he [Harrison] found out that he was possibly a dad, he did everything he could to try to have contact with his daughter. He's going to tell you he was in prison too, but he did everything he could do; writing to his daughter, taking classes at the prison, whatever it took so that when he got out he could do the right thing.

(Doc. 10, Ex. B, Tr. of Jury Trial at 151).

6

> finds that it was solely [Harrison's] decision not to testify. The Court rejects [Harrison's] explanation that he chose not to testify because his lawyer advised him, that morning, that she had a premonition that if [Harrison] would take the stand, the jury would convict him. The Court finds that [Harrison] has failed to meet his evidentiary burden of proof under *Strickland* because the evidence establishes that it was his freely made choice, not his attorney's choice, not to testify; that at the time that counsel made her opening statement, she was of the reasonable belief that [Harrison] was going to testify; that the statements made in opening were reasonable considering the context at the time at which they were made and that [Harrison] was aware of and agreed with counsel's strategic choice to make such comments in the opening statement.

(Doc. 10, Ex. J at 229-30).

As noted by the post-conviction court, Harrison's prior convictions were revealed during opening statement as part of a deliberate defense strategy. During the 3.850 evidentiary hearing, counsel stated that she talked to Harrison on numerous occasions about whether he would testify at trial and that they discussed the pros and cons of him testifying. (Doc. 10, Ex. J, Tr. of Evidentiary Hearing at 117-21). Counsel specifically mentioned that she knew Harrison's prior record was an issue that would have to be overcome if he was going to testify. (*Id.* at 121). And, at the time of opening statement, counsel believed that Harrison was going to testify. (*Id.* at 118). Harrison similarly stated that when the trial began and counsel gave opening statement it was his understanding that he would testify. (*Id.* at 15, 17, 104-07). He also stated that he was aware that if he testified his criminal record would be revealed but that he wanted to testify regardless. (*Id.* at 15, 104-07).

Expecting that Harrison was going to testify, counsel made a strategic decision to reveal to the jury during opening statement that Harrison had a prior criminal record as a

7

basis for overcoming that information during Harrison's expected testimony and to explain why Harrison had not been a part of his daughter's life until recently. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 689. Counsel's testimony revealed that she thoroughly considered the options; thus, her strategic choice to reveal Harrison's prior record to the jury during opening statement constitutes a tactical decision protected by *Strickland*. As such, Harrison has not shown that his counsel was ineffective by revealing his criminal record during opening statement. Harrison has also not alleged that but for this revelation the outcome of the proceeding would have probably been different.

As to Harrison's contention that counsel urged him not to testify because she had a premonition, counsel testified that she did not convince Harrison not to testify and never told him that she had a premonition that if he testified he would be convicted. (Doc. 10, Ex. J, Tr. of Evidentiary Hearing at 124-26). Counsel stated that the decision whether to testify was entirely Harrison's own.[2] (*Id.* at 167). The post-conviction court made the factual finding that counsel did not influence Harrison's decision not to testify. Rather, the post-conviction court found that it was solely Harrison's decision. The post-conviction court also found not credible Harrison's contention that counsel told Harrison that she had a premonition that if he testified he would be convicted. The post-conviction court's

---

[2]Not only did counsel testify that she did not influence Harrison's decision to not testify, but during trial, the trial court also inquired into Harrison's decision. (Doc .10, Ex. B, Tr. of Jury Trial at 556). The court advised Harrison that it was ultimately his decision whether to take the stand and asked Harrison whether his decision not to testify was made "freely and voluntarily" and was a "conscious and specific choice." (*Id.*) Harrison responded in the affirmative. (*Id.*).

8

factual findings are presumed correct unless rebutted by clear and convincing evidence. § 2254(e)(1); *Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001). Harrison has presented no evidence to rebut this presumption in favor of the post-conviction court's factual findings.

Consequently, Harrison fails to demonstrate that the post-conviction court's denial of his petition on this ground was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. As a result, he is not entitled to relief on this ground.

**2. Ground 2**

Next, Harrison alleges that counsel was ineffective for failing to investigate and call an expert witness to rebut the testimony presented at trial by the State's expert witness, Nurse Walker. (Doc. 1 at 13, 19-22). Nurse Walker testified that an absence of physical evidence or injury to the victim of a sexual battery is not indicative of whether a sexual battery occurred. (Doc. 10, Ex. B, Tr. of Jury Trial at 300-05). According to Harrison, expert testimony existed that would have rebutted Nurse Walker's testimony that a sexual battery could have occurred despite the lack of physical evidence and absence of injury to the victim's genitals. (Doc. 1 at 19). Further, Harrison contends that had an expert witness been called to rebut Nurse Walker's medical opinion testimony, a reasonable probability exists that Harrison would have been acquitted. (Doc. 1 at 20).

Harrison raised this claim in his Rule 3.850 motion. In denying Harrison's Rule 3.850 motion on this ground, the post-conviction court stated:

> [Counsel] testified at the 3.850 hearing that she had retained a trial consultant and hired a DNA consultant ([Harrison]'s semen and, hence, his DNA was found in the bedsheets of his daughter's bed) and after having spoken with them, determined that the benefits of an expert witness were questionable. Additionally, [counsel] testified that she utilized co-counsel who was also a nurse and addressed this issue with her as well. At the 3.850 hearing, [Harrison] put on no expert witness that would have provided different testimony than the State's expert witness (i.e., a lack of physical evidence/injury does not mean a sexual battery did not occur). . . . [Harrison] has not demonstrated, by any persuasive or competent evidence, how he was prejudiced by the failure to have an expert evaluate the physical evidence, which the State conceded, for the purposes of this motion, there would not have been any and, as previously stated, there was no testimony at the 3.850 hearing for the Court to evaluate as to [Harrison's] apparent position that the lack of physical evidence equates to no battery. As such, there is no "prejudice" under *Strickland*.

(Doc. 10, Ex. J at 231).

Generally, "complaints of uncalled witnesses are not favored[] because the presentation of testimonial evidence is a matter of trial strategy and allegations of what a witness would have testified to are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) (internal citations omitted);[3] *see also Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."). "'Failing to call a particular witness constitutes ineffective assistance of counsel only when the absence of the witness's testimony amounts to the abandonment of a viable, outcome-changing defense.'" *Dottin v. Sec'y Dep't of Corr.*, No. 8:07-CV-884-T-27MAP, 2010 WL 3766339, at *5 (M.D. Fla. Sept. 16, 2010) (quoting *Jordan v. McDonough*, No.

---

[3]In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

10

6:06-cv-1446-Orl-19KRS, 2008 WL 89848, at *5 (M.D. Fla. Jan. 7, 2008)). Further, "self-serving speculation about potential witness testimony is generally insufficient to support a claim of ineffective assistance of counsel. A petitioner must present evidence of the witness testimony in the form of actual testimony or an affidavit." *Id.* at *6.

Here, counsel utilized a trial consultant and the advice of co-counsel, who was formerly a nurse practitioner, in deciding whether an expert witness was necessary to refute the opinion of Nurse Walker. (Doc. 10, Ex. J, Tr. of Evidentiary Hearing at 124, 160-61, 164-65). Both opined that expert testimony to refute Nurse Walker's testimony would not have been useful because Nurse Walker's opinion—that a sexual battery could have occurred despite a lack of physical signs on the victim—was valid. (*Id.*). Counsel testified that she chose not to refute this testimony because the lack of injury to the victim was consistent with the defense's theory that no sexual battery occurred. (*Id.* at 160).

The record shows that counsel explored this avenue and made a strategic decision not to pursue it. *See Crisp v. United States*, No. 2:10-cv-659-FtM-34CM, 2014 WL 1285894, at *16 (M.D. Fla. Mar. 31, 2014) (stating that "'decisions as to whether to call witnesses or ask particular questions must be regarded generally as tactical matters'" (quoting *Hernandez v. Wainwright*, 634 F. Supp. 241, 248 (S.D. Fla. 1986))). Additionally, Harrison's allegations are conclusory because he has presented no evidence in the form of actual testimony or an affidavit that such testimony was available from an expert witness. As a result, Harrison has failed to show that counsel's performance was deficient in this regard, and Harrison has not, and likely cannot, show that such testimony, if available, would have changed the outcome of the trial.

11

Because Harrison failed to establish deficient performance or prejudice as a result of counsel's failure to call an expert witness to rebut Nurse Walker's testimony, the post-conviction court's rejection of Harrison's ineffective-assistance-of-counsel claim on this ground constitutes a decision that was neither contrary to, nor an unreasonable application of, the *Strickland* two-part test. Consequently, Harrison is not entitled to relief on this ground.

**3.  Ground 3**

Third, Harrison contends that counsel was ineffective for failing to move for a mistrial or curative instruction following a remark during cross-examination by the victim that portrayed Harrison as racist. (Doc. 1 at 22-24). Specifically, the victim stated, "I guess he [Harrison] don't like black people." (Doc. 10, Ex. B, Tr. of Jury Trial at 230). Harrison contends that the accusation was so prejudicial as to taint the entire trial. (Doc. 11 at 25).

Harrison raised this ground in his 3.850 motion, and the post-conviction court denied relief, stating:

> While this comment was not appropriate by the witness, the Court finds that it was not elicited by the defense counsel and that this one comment was not such that it calls into question the reliability or validity of the verdict. Put differently, the Court did instruct the jury, in the closing instructions, that the case must not be decided for or against anyone because you are angry at them and that the verdict should not be influenced by feelings of prejudice, bias or sympathy. If the objection had been made and sustained by the Court, the Court likely would have instructed the jury to disregard that comment but denied the motion for mistrial. Counsel also testified, at the 3.850 hearing, that she believed that cross-examination of the victim was going well (i.e., the victim was being repeatedly impeached) and did not want a mistrial. Defense counsel's failure to request a curative instruction did not, under the totality of the circumstances of the case, cast doubt as to the reliability of the verdict. The Court finds that Defendant has failed to meet his evidentiary burden of proof under *Strickland* as to this ground.

12

(Doc. 10, Ex. J at 233).

As recognized by the post-conviction court, the victim's comment during cross examination was inappropriate. However, as an initial matter, this comment was not solicited by counsel; rather it was a spontaneous comment made by the witness. Furthermore, when questioned as to her failure to move to strike or for a mistrial following the inappropriate comment by the victim, counsel stated that the victim "was just awful" on the stand and she did not want to emphasize the comment.[4] (Doc. 10, Ex. J, Tr. of Evidentiary Hearing at 138).

Based on this one isolated comment, the Court cannot conclude that counsel's strategy to avoid drawing attention to the comment was unreasonable. *Cf. Petty v. Sec'y Dep't of Corr.*, No. 1:09-CV-171-MMP-GRJ, 2012 WL 4093381, at *10-11 (N.D. Fla. Aug. 14, 2012) (report and recommendation)*, adopted by Petty v. McNeil*, No. 1:09cv171-MP-GRJ, 2012 WL 4093097 (N.D. Fla. Sept. 18, 2012) (concluding that defense counsel's strategy of not objecting to the playing of messages containing racial epithets used by the defendant so as to not draw attention to them was not unreasonable). The decision to move to strike the comment or for mistrial is the very type of trial strategy decision, which, absent compelling circumstances, does not constitute ineffective assistance of counsel. *See Sanchez v. United States*, 782 F.2d 928, 935 (11th Cir. 1986) (stating that "counsel will not be deemed constitutionally deficient merely because of tactical decisions"). Harrison has

---

[4]Specifically, counsel testified: "I'm not going to emphasize something like that. I don't want to go there, you know." (Doc. 9, Ex. J, Tr. of Evidentiary Hearing at 138).

13

failed to demonstrate that counsel's failure to move to strike or for mistrial was not a sound strategic decision.

Even if counsel erred in not moving to strike the comment or for mistrial, Harrison has failed to establish that the error resulted in prejudice. Harrison contends that the comment by the witness was so prejudicial as to "taint the entire trial as to the entire jury but particularly the four African-American jurors, depriving Harrison of a fundamentally fair trial." (Doc. 11 at 25). Harrison's allegation, however, is entirely conclusory, as he offers no facts to support this contention. Regardless, Harrison cannot establish that the trial court would have granted the motion for mistrial, and, as stated by the post-conviction court, the court would likely not have done so. (Doc. 10, Ex. J at 233). Rather, the post-conviction court stated that it would have likely granted the motion to strike and provided a curative instruction, but would not have granted a motion for mistrial. A curative instruction would have done little to change the outcome of the trial as the effect of the improper comment was mitigated by the following jury instruction provided by the trial court: "[Y]our verdict should not be influenced by feelings of prejudice, bias or sympathy." (Doc. 10, Ex. B, Tr. of Jury Trial at 631). Because Harrison has not presented any evidence to establish that had counsel moved to strike the comment or for mistrial, the outcome of the proceedings would have been different, Harrison has not established prejudice.

Therefore, the post-conviction court's rejection of Harrison's ineffective-assistance-of-counsel claim on this ground constitutes a decision that was neither contrary to, nor an unreasonable application of, the *Strickland* two-part test, and Harrison is not entitled to relief on this ground.

**4. Ground 4**

Finally, Harrison argues that counsel was ineffective for failing to object to testimony offered by Nurse Walker that Harrison contends was outside the scope of her knowledge and expertise. (Doc. 1 at 13, 25-29). Specifically, Harrison takes issue with the testimony of Nurse Walker regarding how hepatitis C is transmitted.

Nurse Walker testified as follows:

Q      Okay. And were you aware that there was some concern about the perpetrator having Hepatitis C?

A      Yes, sir.

Q      And are you familiar with how Hepatitis C is transmitted?

A      The majority of Hepatitis C is transmitted blood-to-blood transmission such as IV drug users. There is a small chance that it can be transmitted through sexual contact.

Q      When you say small chance, what are you referring to?

A      I believe it's between one and ten percent, I believe.

Q      Now, how is Hepatitis C actually transmitted? What needs to happen in order to transmit that?

A      That's a good question. I'm not—

Q      Let me go ahead and rephrase the question.

A      Okay.

Q      Would ejaculation by someone matter in the transmission of Hepatitis?

A      I believe that it can be transmitted through the ejaculate but obviously it doesn't happen every time.

> Q    Okay. And would it matter if the person ejaculated inside the person that did not have Hepatitis or would that have any effect.
>
> A    For my understanding, I think that ejaculation inside would be much more risky for Hepatitis C but then I think there also has to be some kind of tear or injury that would help that transmission.

(Doc. 10, Ex. B, Tr. of Jury Trial at 304-05).

The post-conviction court denied relief on this ground, stating:

> The State's witness was accepted as an expert by the Court in the field of child sexual abuse and has post-Master [sic] degree qualifications in Forensic Nursing. [Harrison] contends that his counsel was ineffective by not objecting to the nurse practitioner's opinion as to whether hepatitis always occurs through ejaculate of an infected person. The Court does not find Nurse Practitioner Walker's testimony to be outside the scope of her expertise nor did [Harrison] put on evidence at the 3.850 hearing to refute this testimony so that the Court could evaluate it, consistent with *Tyson*[ *v. Florida*, 905 So. 2d 1048 (Fla. 2d DCA 2005)]. The Court finds that [Harrison] has failed to meet his evidentiary burden of proof under [this ground].

(Doc. 10, Ex. J at 235).

Harrison merely argues in a conclusory fashion that Nurse Walker was not qualified to offer an opinion about the transmission of hepatitis C. But Harrison highlights no record evidence to support his claim that a nurse practitioner qualified as an expert in evaluations of child sexual abuse would not be qualified to testify about the transmission of hepatitis C. Indeed, Harrison presented no testimony or evidence, such as an affidavit of another expert, to show that Nurse Walker testified to matters outside of the scope of her expertise. Thus, Harrison has not shown that counsel was ineffective for failing to object to that testimony. Because Nurse Walker did not testify to matters outside the scope of her expertise, Harrison has also failed to establish prejudice as he cannot show a reasonable

16

probability that had counsel objected to Nurse Walker's testimony regarding hepatitis C, the objection would have been successful.

Even if Nurse Walker testified to matters outside the scope of her expertise, Harrison has still not established that counsel's failure to object to this testimony resulted in prejudice. Harrison contends that this testimony by Nurse Walker "undercut a crucial aspect of Harrison's defense." (Doc. 11 at 33). According to Harrison, the fact that he had hepatitis C and the victim did not was a factor that showed that the sexual battery did not occur. (Doc. 1 at 26). Nurse Walker's testimony, however, did not undercut Harrison's theory of defense, and, in fact, supported that defense in part. Specifically, Nurse Walker testified that hepatitis C could be transmitted through ejaculate. (Doc. 10, Ex. B, Tr. of Jury Trial at 304). Also, assuming that Harrison pursued such a defense, he would have to overcome the evidence that his ejaculate was found on the victim's pillow case and bed sheet, which could potentially explain why the victim did not contract hepatitis C from the sexual battery. (*Id.* at 370, 410-23).

Again, the post-conviction court did not err in rejecting Harrison's ineffective-assistance-of-counsel claim on this ground because the decision was neither contrary to, nor an unreasonable application of, the *Strickland* two-part test. Thus, Harrison is not entitled to relief on this ground.

## **CONCLUSION**

Because all of Harrison's claims lack merit, the petition is due to be denied.

Accordingly, it is therefore **ORDERED AND ADJUDGED** that:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2. The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL
## IN FORMA PAUPERIS DENIED

**IT IS FURTHER ORDERED** that Harrison is not entitled to a certificate of appealability. A petitioner does not have absolute entitlement to appeal a district court's denial of his or her habeas petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Harrison "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Harrison has not made this showing. Because Harrison is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

**DONE AND ORDERED** this 18th day of November, 2014.

Charlene Edwards Honeywell
United States District Judge

**Copies furnished to:**
Counsel/Parties of Record